

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3562 | **DATE** | 12/28/2004 |
| **CASE TITLE** | Audio Car Stereo, Inc. vs. The Little Guys, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Onkyo USA Corp.'s Motion to Dismiss Plaintiff's First Amended Complaint is granted in part. Defendant HTSA's Motion to Dismiss is granted in part. Defendant Wexler, et. al.'s Motion to Dismiss Count I of the First Amended Complaint is granted in part. Defendant Wexler, et. al.'s Motion to Dismiss Wexler Individually is denied as moot and without prejudice in light of Count I being dismissed. As explained in the Court's Memorandum Opinion, Count I of Plaintiff's Amended Complaint is dismissed without prejudice. The Court does not address Defendants' arguments related to Plaintiff's state law claims because the Court does not have jurisdiction over those claims in light of Count I being dismissed. Case is dismissed without prejudice, with leave to file Second Amended Complaint by or on 1/28/05 consistent with this Opinion. Status Hearing set for 1/19/05 is stricken.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 2 9 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | GMA docketing deputy initials | 26 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 12/28/04 date mailed notice | |
| TH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AUDIO CAR STEREO, INC., d/b/a Music In Motion, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE LITTLE GUYS, INC., an Illinois corporation, DAVID WEXLER, an individual, HOME THEATER SPECIALISTS OF AMERICA, ONKYO U.S.A. CORPORATION, a New Jersey corporation and UNKNOWN DEFENDANTS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04 C 3562 |

**DOCKETED**
DEC 2 9 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Audio Car Stereo, Inc. ("Audio") sued Defendants The Little Guys, Inc. ("The Little Guys"), David Wexler ("Wexler"), Home Theatre Specialists of America ("HTSA") and Onkyo U.S.A. Corporation ("Onkyo") on May 21, 2004. Before Defendants responded, Audio filed its Amended Complaint, alleging antitrust violations and various state law claims. Specifically, Audio alleges: (1) violation of the Sherman Antitrust Act against all defendants; (2) intentional interference with contract against defendants Wexler, The Little Guys, and HTSA; (3) common law conspiracy against defendants Wexler, The Little Guys, and HTSA; (4) violation of the Illinois Antitrust Act against all defendants; and (5) violation of the Illinois Consumer Fraud Act against all Defendants.

Defendants move to dismiss Audio's Amended Complaint. All defendants move to dismiss Audio's antitrust claims under Rule 12(b)(6). Wexler separately moves to dismiss all counts because Audio failed to plead that Wexler acted individually. HTSA moves to dismiss the intentional interference with contract, common law conspiracy, and Illinois Consumer Fraud

Act claims. Onkyo moves to dismiss Audio's state law claims for lack of subject matter jurisdiction. For the reasons discussed below, the Court grants Defendants' motions to dismiss Audio's federal antitrust claims without prejudice, and dismisses Audio's state law claims for lack of subject matter jurisdiction.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad. Assocs, Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). A court must accept as true all well-plead allegations of a complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Courts construe ambiguities in favor of the plaintiff. *Id.* Plaintiff can plead conclusions and need not allege all or any facts entailed by the claim. *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2003). While an antitrust plaintiff only must allege that it suffered an injury due to a defendant's unlawful restraint of interstate commerce, a plaintiff may plead itself out of court by alleging facts that do not constitute an antitrust violation. *Alpha School Bus Co., Inc. v. Wagner*, No. 03 C 5009, 2004 WL 1368804, *3 (N.D. Ill. Jun. 17, 2004) (internal citations omitted).

## BACKGROUND

For the purposes of this Opinion, the Court accepts the following facts as true.

### I.  The Parties

Audio is an Illinois corporation, conducting business under the name Music in Motion. (R. 10-1, Am. Compl. ¶2.) Audio is an independent retailer of high-end electronic equipment for homes, businesses and automobiles. (*Id.* ¶ 1.) Audio has two locations in the Chicago area – Crestwood and Chicago Heights, Illinois. (*Id.* ¶2.) Audio distinguishes itself from larger

2

competition by emphasizing superior product lines and customer service. (*Id.* ¶1.) Audio maintains this strategy by serving as an authorized and/or exclusive dealer for certain product lines and limiting the number of product lines it offers. (*Id.*) One of the product lines Audio secured and promoted to its customers was Integra, a marquee stereo division of Onkyo. (*Id.*)

The Little Guys is an Illinois Corporation, operating an audio retail store in the Chicago market, in Glenwood, Illinois. (*Id.* ¶ 3.) The Little Guys is a direct competitor of Audio, with its Glenwood, Illinois location approximately 1.5 miles from Audio's Chicago Heights location. (*Id.*)

Wexler is an individual residing in Illinois. (*Id.* ¶4.) Wexler is an officer of The Little Guys. (*Id.*) In company advertising, Wexler identifies himself as the "co-owner" of The Little Guys. (*Id.*)

HTSA is a membership organization consisting of 46 members with 90 storefronts. (*Id.* ¶5.) HTSA serves as a buying and contract negotiating entity for its members by using the combined buying power of its members to elicit pricing terms and distribution agreements for its members. (*Id.*) HTSA's members feature products from a variety of manufacturers. (*Id.*) HTSA is located in Chester Springs, Pennsylvania and has members throughout the United States, including The Little Guys. (*Id.*)

Onkyo is the United States arm of a major Japanese corporation that, among other things, manufactures consumer electronics products. (*Id.* ¶6.) Onkyo distributes audio equipment for sale throughout the United States, including in this judicial district. (*Id.*)

II. **Audio's Relationship With Onkyo**

Onkyo first appointed Audio as an authorized dealer in 1996. (*Id.* ¶ 10.) Audio continued to sell Onkyo products until 2003. (*Id.*) Based on its mutually successful relationship,

3

Onkyo approached Audio about becoming an authorized dealer for Onkyo's new Integra line of high-end products. (*Id.* ¶11.) Audio accepted the appointment. It then purchased inventory, trained its sales and technical staff on Integra product, and advertised the Integra line. (*Id.* ¶12.) On September 16, 1999, Audio signed an authorized dealership agreement with Integra, becoming one of Integra's first authorized dealers in the Chicago area. (*Id.* ¶13.) Audio only sells a limited number of stereo lines. (*Id.* ¶14.) Therefore, Audio focused its sales efforts on Integra. (*Id.*) In only its first year as an authorized Integra dealer, Audio had the second highest sales of any dealer in the Chicago market. (*Id.*)

### III. The Little Guys and Wexler Enter Audio's Territory

Audio pleads, on information and belief, that in late 2000, Wexler contacted Mr. Keith Haas ("Haas"), then Integra's Regional Sales Manager. (*Id.* ¶15.) Wexler informed Haas that he wanted the Integra line for The Little Guys. (*Id.*) Audio believes that Wexler used the threat of HTSA member retribution, in the form of refusal to support Integra if Haas and Integra refused to give The Little Guys an authorized dealership. (*Id.*)

Haas contacted Integra's independent sales representative company, inquiring about the suitability of The Little Guys as an Integra dealer. (*Id.* ¶16.) The sales representative company told Haas that it would harm both Audio and Integra to bring on The Little Guys as an authorized dealer because of The Little Guys' proximity to Audio's Chicago Heights location. (*Id.*) Haas knew that Wexler and The Little Guys only wanted the Integra line in order to harm Audio. (*Id.* ¶17.) Haas also admitted that The Little Guys and Wexler were using the clout of HTSA to obtain appointment as an authorized Integra dealer. (*Id.* ¶17.) Given Audio's success and the problems in having another authorized dealer in the same marketplace, Haas indicated that Onkyo would not appoint The Little Guys as an authorized Integra dealer. (*Id.* ¶18.) At the

insistence of Wexler, however, Mr. Mark Friedman ("Friedman"), Haas' superior at Integra, overruled Haas' decision. (*Id.* ¶19.) Integra appointed The Little Guys as an authorized dealer in early 2001. (*Id.*)

## IV. Competition Between Audio and The Little Guys

In early 2002, Wexler complained to Integra that it should terminate Audio as an authorized dealer so that The Little Guys could better sell Integra products. (*Id.* ¶20.) Wexler also complained to Friedman that Audio was disparaging Integra, cutting prices to hurt the image of Integra, and in other ways not adequately supporting the Integra product line. (*Id.* ¶21.) Audio alleges that these allegations were knowingly false and made with the intent of causing Integra to terminate Audio as an authorized dealer. (*Id.*)

In order to justify Audio's termination, and with Wexler's prior knowledge, Friedman sent a "secret shopper" to both Audio and The Little Guys to examine the sales presentations of Integra products. (*Id.* 22.) Despite being tipped to the "secret shopper" by Friedman, the shopper still judged The Little Guys as having an inferior presentation to that of Audio. (*Id.* 23.) Friedman simply suggested sending more "secret shoppers" to the stores. (*Id.* 24.) Even after the "secret shopper" evaluation, Wexler stepped up his campaign to have Audio terminated and more bluntly threatened that HTSA was backing him. (*Id.* 25.)

In mid-2002, Mr. Mark Wiensenberg ("Wiensenberg") replaced Haas at Integra. (*Id.* 26.) Audio alleges that Wexler contacted Wiesenberg, saying that Wexler and HTSA wanted Audio terminated as a dealer. (*Id.*) In October 2002, Wiensenberg held a meeting with Audio's principals. (*Id.* ¶27.) Wiensenberg informed Audio's principals that as of October 31, 2002, Integra was terminating Audio as an Integra dealer. (*Id.* ¶27.) Audio's principals protested that the timing of the termination, just before the holiday buying season, would cripple Audio's

business because it only represented a small number of stereo lines. (*Id.* ¶28.) Wiesenberg agreed that Audio could continue as an authorized dealer through the end of December 2002, although he refused to answer why he had to terminate Audio. (*Id.* ¶28.)

According to Audio's pleadings, to avoid a legal confrontation with Audio, on November 1, 2002, Integra sent a letter to its dealers nationwide, claiming to "defranchise" or terminate them. (*Id.* 32.) The authorized dealers, including Audio and The Little Guys, were then given new agreements to sign for the year 2003. (*Id.*) Audio pleads on information and believe that Integra took this action so that it could acquiesce to Wexler's, The Little Guys', and HTSA's demand to terminate Audio, but without the risk of litigation. (*Id.* ¶33.)

In December of 2002, Wexler told Integra that he would get another line of receivers from a direct competitor of Integra's if it did not terminate Audio. (*Id.* 34.)

## V. Integra Terminates Audio as a Dealer

On August 13, 2003, Audio's President, Mr. Charles Goldman ("Goldman"), received a letter from Wiensenberg, terminating Audio's authorized dealership agreement. (*Id.* ¶38.) The letter stated that "[t]he key factor in determining this was a review of dealer support and our conclusion that presently Integra products are not being supported by your company." (*Id.*) Audio is not aware of any "review" of its support of the Integra line. (*Id.* ¶39.) Rather, Audio believes this reason was merely a pretext to divert attention from the fact that Integra had acquiesced to the pressure from Wexler, The Little Guys, and HTSA to terminate Audio. (*Id.*)

Audio pleads that by eliminating Audio as its competition, Wexler, The Little Guys, and HTSA have fulfilled their design of harming Audio and taking over as the sole Integra dealer in the relevant Chicago area marketplace. (*Id.* ¶40.) Audio also pleads that now Integra, The Little

Guys, and other HTSA members are free to control the pricing of the Integra products in the marketplace. (*Id.* ¶41.)

Audio also pleads that Wexler and The Little Guys have targeted manufacturers of other product lines, pressuring them not to do business with Audio lest they face retribution by other HTSA members. (*Id.* ¶42.) Indeed, at least one other product line, Marantz, and one accessory line, Monster Cable, have terminated Audio as an authorized dealer. (*Id.*)

## ANALYSIS

### I. Sherman Act Violations

#### A. Unreasonable Restraints on Trade

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. The Supreme Court has long recognized that Congress intended this section to prohibit only "unreasonable" restraints of trade. *Business Elec. Corp. v. Sharp Elec. Corp.*, 485 U.S. 717, 723, 108 S.Ct. 1515, 1519, 99 L.Ed. 2d 808 (1988). Courts judge alleged violations of the Sherman Act under one of two approaches: (1) the *per se* rule; or (2) the rule of reason.

Under the first approach, certain restraints have such a "pernicious effect on competition" and are so "lacking in redeeming value" that they are *per se* unlawful. *Sharp Elec.*, 485 U.S. at 724, 108 S.Ct. at 1519 (quoting *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958)). When a restrictive practice is *per se* unlawful, the practice violates the Sherman Act; there is no need to further examine its anticompetitive effects. *Center Video Indus. Co., Inc. v. United Media, Inc.*, 995 F.2d 735, 737 (7th Cir. 1993). The range of conduct subject to the *per se* rule is narrow. *Id.* (citing *Sharp Elec.*, 485 U.S. at 724, 108 S.Ct. at

7

1519). "[A] vertical restraint is not illegal *per se* unless it includes some agreement on price or price levels." *Sharp Elec.*, 485 U.S. at 735-36, 108 S.Ct. at 1525.

If the *per se* rule does not apply, which is typically the case, courts apply the "rule of reason" analysis. *Sharp Elec.*, 485 U.S. at 723, 108 S.Ct. at 1519. Under the "rule of reason," "the fact finder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 35, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977).

### B. The Amended Complaint Does Not Allege Conduct that is *Per Se* Unlawful

Audio argues that Defendants' conduct is *per se* unreasonable. In support, Audio contends that its Amended Complaint alleges that Defendants reached a vertical price-fixing agreement. (R. 21-1, Pl.'s Resp. at 5.) Audio points to two locations in the Amended Complaint from which it contends the Amended Complaint "infers" that Defendants agreed to prices for Integra products. (*Id.* at 5-6.) First, Audio points to paragraph 1, alleging that Defendants' actions have allowed The Little Guys "to maintain elevated prices for Integra products." (R. 10-1, Am. Compl. ¶1.) Second, Audio also points to paragraph 41, alleging that Defendants' actions have allowed The Little Guys and HTSA members to be "free to control the pricing of Integra products in the marketplace." (*Id.* ¶41.)

Audio does not dispute Defendants' argument that the Amended Complaint alleges a vertical restraint on trade. A vertical restraint is "imposed by agreement between firms at different levels of distribution." *A-Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1402-3 (7th Cir. 1992) (quoting *Sharp. Elec.*, 485 U.S. at 730, 108 S.Ct. at 1523). On the other hand, a horizontal restraint is "imposed by agreement between competitors." *Id.* In order for a

vertical restraint to be *per se* unlawful, a price fixing agreement must exist. *Sharp Elec.*, 485 U.S. at 735-36, 108 S.Ct. at 1525. Here, Audio has failed to allege the existence of any agreement by Defendants to fix prices. Merely alleging that Defendants are capable of maintaining elevated prices and controlling pricing is not the same as alleging that an actual agreement to fix prices exists. The Supreme Court long ago made clear that an actual agreement must exist:

> That price-fixing includes more than the mere establishment of uniform prices is clearly evident... [P]rices are fixed... if the range within which purchases or sales will be made is agreed upon, if the prices paid or charged are to be at a certain level or on ascending or descending scales, if they are to be uniform... They are fixed because they are agreed upon.

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 222-23, 60 S.Ct. 811, 843-44, 84 L.Ed. 1129 (1940). Audio, therefore, has failed to allege a *per se* violation of the Sherman Act. Accordingly, the Amended Complaint must sufficiently allege a cause of action under a rule of reason analysis in order for it to survive Defendants' Rule 12(b)(6) motions.

### C. The Rule of Reason

Defendants argue that the Amended Complaint fails to state a claim for a violation of Section 1 of the Sherman Act because Audio did not allege any anticompetitive effect in the relevant market. Audio responds that it does not need to allege a relevant market as long as it alleges direct anticompetitive effects. Audio contends that it alleged direct anticompetitive effects in paragraph 1(Defendants acted "in order to monopolize trade in the market, to maintain elevated prices for Integra products, and [] to drive Audio and other competitors out of business by cutting off their product supplies"); paragraph 46 (Defendants' conduct "deprive[d] consumers of competition in the sale of Integra products"); and paragraph 49 (Defendants "can eliminate competition and control pricing in the market, thus depriving consumers of free and

9

open competition"). Audio cites two cases, *Federal Trade Comm'n v. Indiana Federation of Dentists*, 476 U.S. 447, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986) and *Toys "R" Us, Inc. v. Federal Trade Commission,* 221 F.3d 928 (7th Cir. 2000), in support of its argument that it does not have to plead a relevant market.

The Supreme Court, in *Indiana Federation*, upheld a Federal Trade Commission ("FTC") finding that a dental association rule forbidding members to submit x-rays to insurers in connection with claim forms constituted an unreasonable restraint of trade. 476 U.S. 447, 106 S.Ct. 2009. One of the Federation's arguments in challenging the FTC's finding was that the FTC never engaged in any analysis of the relevant market. *Id.* at 459-60 and 2018-2019. The Supreme Court rejected this argument, noting that the Federation's policy was a horizontal restraint of trade that did not require "elaborate industry analysis" to demonstrate its anti-competitive character. *Id.* The Supreme Court did note, however, that the FTC had found that in specific geographic areas in Indiana, Federation dentists constituted "heavy majorities" of practicing dentists. *Id.* at 460 and 2019. The FTC also found that over a number of years, insurers in those geographic areas were unable to obtain compliance with their requests for submitting x-rays. *Id.* The Supreme Court held that the FTC finding of "actual, sustained adverse effects on competition in those areas where IFD dentists predominated, viewed in light of the reality that markets for dental services tend to be relatively localized, is legally sufficient" to find the restraint unreasonable even absent elaborate market analysis. *Id.* at 461 and 2019.

The Seventh Circuit, in *Toys "R" Us,* upheld the FTC's finding of an unreasonable restraint of trade on the part of retailer Toys "R" Us. 221 F.3d 928. The Seventh Circuit analyzed the restraint as a horizontal agreement. *Id.* at 934-36. FTC found that Toys "R" Us took part in a boycott that caused the 10 major toy manufacturers to reduce output of toys to

warehouse clubs. *Id.* at 937. The FTC also found that the affected manufacturers accounted for approximately 40% of the traditional toy market and that Toys "R" Us had 20% of the national wholesale market and up to 49% of some local wholesale markets. *Id.* The Seventh Circuit, therefore, held that these findings showed that Toys "R" Us was preventing a price collapse by coordinating with competitors. *Id.* It concluded that this practice is plainly illegal and therefore did not require any further market analysis. *Id.*

Defendants respond by pointing to *Republic Tobacco Co.*, 381 F.3d 717 (7th Cir. 2004), which declined to follow *Indiana Federation* and *Toys "R" Us* in the context of a vertical restraint. The plaintiff, in *Republic Tobacco,* relied on *Toys "R" Us*, arguing that it did not need to show market power. The Seventh Circuit rejected the plaintiff's argument, noting that no court has applied the direct anti-competitive effects analysis outside the context of horizontal agreements. *Id.* at 736. The Seventh Circuit explained that *Indiana Federation* and *Toys "R" Us* stand for:

> the proposition that if a plaintiff can show the rough contours of a relevant market, and show that the defendant commands a substantial share of the market, then direct evidence of anticompetitive effects can establish the defendant's market power – in lieu of the usual showing of a precisely defined relevant market and a monopoly market share."

*Id.* at 737. The Seventh Circuit, therefore held that the plaintiff must "precisely establish a relevant market." *Id.* Defendants argue that Audio alleges a vertical restraint and has failed to allege the "rough contours of a relevant market" and therefore *Indiana Federation* and *Toys "R" Us* do not apply to this case.

The Court agrees with Defendants' reasoning. First, as Defendants explain, Audio does not cite any cases where the Court did not require relevant market analysis in the context of a vertical restraint. Both *Indiana Federation* and *Toys "R" Us* involved alleged horizontal

11

restraints. This distinction matters because, as the Supreme Court has explained, "vertical restraints are generally more defensible than horizontal restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 14, 118 S.Ct. 275, 281, 139 L.Ed.2d 199 (1997). Second, as *Republic Tobacco* holds, even under a direct anticompetitive effect analysis, Audio still must allege the contours of a relevent market. Audio does not even argue in its Opposition Brief that its Amended Complaint does so. Third, the Amended Complaint contains no allegations that could constitute the "actual, sustained adverse effects on competition" in a geographic area where Defendants had market power, found in the *Indiana Federation* and *Toys "R" Us* cases. 476 U.S. 447, 461, 106 S.Ct. 2009, 2019. Accordingly, in order to survive Defendants motions to dismiss, Audio must have alleged a relevant market.

Audio does not argue that it has sufficiently alleged a legally cognizable relevant market. Examining the Second Amended Complaint confirms that Audio has failed to do so. A relevant market involves both a product and a geographic dimension. *Brown Shoe Co. v. United States*, 370 U.S. 294, 324, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). Audio's attempted allegations related to a product market, to the extent they exist, are vague and therefore insufficient as a matter of law. In some instances, Audio appears to allege that Integra products comprise the relevant product market. (*See* R. 10-1, Am. Compl. ¶46 ("deprive consumers of competition in the sale of Integra products.") On the other hand, Audio also makes allegations related to "competition in the Chicago home electronics market." (*Id.* at ¶52.)[1] While the law does not require pleading with particularity for antitrust claims, *see Midwest Gas Services, Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703, 710 (7th Cir. 2003), it does entitle Defendants to notice of the Sherman Act

---

[1]While Audio may plead in the alternative, *see* FED.R.CIV.P. 8(e)(2), it must do so clearly enough so that Defendants, and the Court, can discern the nature of the alleged relevant markets. Audio's vague reference to a variety of different product markets is different from pleading in the alternative as contemplated by the Federal Rules.

violations alleged against them. FED.R.CIV.P. 8(a). Audio's Amended Complaint is not sufficient to provide such notice, even if the mentioned product markets were legally cognizable.[2]

Audio also fails to sufficiently allege the relevant geographic market. The Amended Complaint alleges that Audio and The Little Guys compete in the "Chicagoland area." (R. 10-1, Am. Compl. ¶47). While the Court accepts Audio's allegations as true, the Court, however, "[i]n considering a motion to dismiss [] is not required to don blinders and to ignore commercial reality." *See 42nd Parallel North v. E Street Denim Co.*, 286 F.3d 401, 406 (7th Cir. 2002) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir. 1984)). As Defendants point out, there are numerous dealers of Integra product in the "Chicagoland area." Indeed, the Amended Complaint, itself, demonstrates there are other Integra dealers in Chicago besides Audio and The Little Guys. (R. 10-1, Am. Compl. ¶14.) Audio apparently concedes that the "Chicagoland area" is not a legally cognizable geographic market and in its Opposition Brief attempts to redefine the geographic market as "a limited geographical area with a ten or so mile radius around Glenwood and Chicago Heights." (R. 21-1, Pl. Resp. at 8.) As Defendants point out, a plaintiff cannot amend its complaint by inserting allegations in its briefing in response to a

---

[2]Because Audio does not argue in its Opposition Brief that it alleged a relevant product market, the Court does not reach the issue of whether any product market mentioned in the Amended Complaint would be legally cognizable. It is worth noting, as Defendants point out, that the relevant product market, generally does not consist merely of the defendant's product, but also any viable substitute products. *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 404, 76 S.Ct. 994, 1012, 100 L.Ed. 1264 (1956); *Blue Cross & Blue Shield United v. Marshfield Clinic*, 65 F.3d 1406, 1410 (7th Cir. 1995) ("In defining a market, once must consider [possible] substitution both by buyers and by sellers.")

motion to dismiss. *Car Carriers,* 745 F.2d at 1107. If Audio desires to amend its pleadings, it must do so in accordance with the Federal Rules.[3]

Audio has failed to sufficiently plead anticompetitive effects in a legally cognizable relevant market. The Court, therefore, grants Defendants' motions and dismisses Count I of the Amended Complaint pursuant to Rule 12(b)(6).[4] This dismissal is without prejudice.

## II. Audio's State Law Claims

42 U.S.C. § 1367(c)(3) allows a federal district court to decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. Audio's Amended Complaint alleged that the Court had subject matter jurisdiction over this action by virtue of 28 U.S.C. § 1331. Having dismissed the only federal claims in the action, the Court declines to exercise supplemental jurisdiction over the remaining claims arising under state law. Accordingly, the Court dismisses Counts II, III, IV, and V, without prejudice.

---

[3] Absent a discernible market, the Court cannot determine whether Audio has sufficiently alleged an anticompetitive effect in a relevant market. *See 42nd Parallel,* 286 F.3d at 405 (noting that even though plaintiff may no longer compete in the market, competition in that market may still be thriving). Because Audio's allegations appear to focus on the harm to Audio, should Audio attempt to re-plead, the Court notes that antitrust laws protect competition and not consumers. *42nd Parallel North,* 286 F.3d at 405 (citing *Brown Shoe Co.,* 370 U.S. at 320, 82 S.Ct. 1502).

[4] Because the Court dismisses Audio's Sherman Act allegations with respect to all Defendants, the Court does not reach Defendants' other arguments for dismissal. Defendants are not prejudiced from re-raising these arguments if Plaintiff can state a claim over which this Court has jurisdiction and Plaintiff re-alleges its state court claims.

14

## CONCLUSION

Pursuant to Rule 12(b)(6), the Court dismisses Count I of Audio's Amended Complaint without prejudice. Because the Court does not have subject matter jurisdiction over Audio's remaining state law claims in Counts II, III, IV, and V, the Court also dismisses those claims without prejudice. Plaintiff has until January 28, 2005 to file a Second Amended Complaint consistent with this Opinion.


Dated: December 28, 2004                ENTERED:

                                        _____
                                        AMY J. ST. EVE
                                        United States District Court Judge